UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| Independent Market Monitor for PJM<br><br>Petitioner,<br><br>vs.<br><br>Federal Energy Regulatory Commission,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 24-1164 |

**REPLY OF
THE INDEPENDENT MARKET MONITOR FOR PJM**

Pursuant to Section 27(a)(3) of the Federal Rules of Appellate Procedure and the Circuit Rules of this Court, Monitoring Analytics, LLC, acting in its capacity as the Independent Market Monitor for PJM[1] ("Market Monitor"), submits this reply to the motion filed on July 8, 2024, by the Federal Energy Regulatory Commission ("FERC") seeking dismissal of the appeal for lack of standing ("Motion").

The appeal concerns the Commission's failure to enforce a provision of the Tariff that protects the ability of the Market Monitor to participate in PJM

---

[1]   PJM Interconnection, L.L.C. ("PJM") is a Regional Transmission Organization approved by the Federal Energy Regulatory Commission. The Market Monitor is also known as the "IMM" or "Market Monitoring Unit."

stakeholder processes. Provisions of the tariff have the force of law.[2] Section IV.G of Attachment M to the PJM Open Access Transmission Tariff ("Tariff") ("Section IV.G") states:

> The Market Monitoring Unit may, as it deems appropriate or necessary to perform its functions under this Plan, participate (consistent with the rules applicable to all PJM stakeholders) in stakeholder working groups, committees or other PJM stakeholder processes.

Section IV.G is broadly stated and specifically defers to the Market Monitor's judgement to determine the stakeholder processes in which the Market Monitor may participate. The rule is there to protect the independence of the Market Monitor and its ability to "perform its functions."[3] The rule is there to

---

[2] *See* Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520 (1939) ("Until changed, tariffs bind both carriers and shippers with the force of law."); Discovery Gas Transmission LLC, 148 FERC ¶ 61,183, 62018 (2014) ("For the "tariff has the force of law and is binding on all, including the Commission, absent a modification of the tariff.'"), citing, *e.g.*, *Tennessee Gas Pipeline Co.*, 27 FERC ¶ 61,352, at 61,686 (1984), citing East Tennessee et al. v. FERC, 631 F.2d 794, 796 (D.C. Cir. 1980); *NextEra Energy, Inc. v. Pac. Gas & Elec. Co.*, 167 FERC ¶ 61,096 at P 13 (2019) citing Bos. Edison Co. v. FERC, 856 F.2d 361, 372 (1st Cir. 1988) (filed rate "is to be treated as though it were a statute, binding upon the seller and purchaser alike."), citing Nw. Pub. Serv. Co. v. Montana-Dakota Utils. Co., 181 F.2d 19, 22 (8th Cir. 1950).

[3] *See* Tariff Attachment M § III.C (Independence) ("The Market Monitoring Unit shall be independent from, and not subject to, the direction or supervision of any person or entity, with the exception of the PJM Board as specified in section III.D above, and the Commission. No person or entity shall have the right to preview, screen, alter, delete, or otherwise exercise editorial control over or delay Market Monitoring Unit actions or investigations or the findings, conclusions, and recommendations developed by the Market Monitoring Unit that fall within the scope of market monitoring responsibilities contained in this Plan. Nothing in this

prevent PJM or stakeholders from excluding the Market Monitor from stakeholder processes and harming its interests. The decision to exclude the Market Monitor from a stakeholder process is the harm that gave rise to this case.

The Liaison Commission is a stakeholder process, and the plain language of this provision protects the ability of the Market Monitor to participate. The failure to enforce this rule injures the Market Monitor because it interferes with the ability of the Market Monitor to perform its functions, including, in particular, its market design function. The failure to enforce this rule also interferes with its ability to engage in discussion among market participants and the Board. If the Market Monitor does not have access to such information and it is deprived of the opportunity to respond, it is injured. The Market Monitor's views on the facts should be accepted for purposes of assessing standing.[4]

The Market Monitor has standing to ensure the enforcement of a Tariff provision that has as its sole purpose to protect the Market Monitor's interest in independently performing its functions.

---

section shall be interpreted to exempt the Market Monitoring Unit from any applicable provision of state or federal law.").

[4] *See* Citizens for Resp. & Ethics in Wash. v. United States Dep't of Homeland Sec., Civil Action No. 22-cv-3350 (USDC for D.C., March 19, 2024) ("In assessing standing, the court must 'accept all of the factual allegations in the complaint as true' … and construe the complaint 'in the light most favorable to' the non-moving party), citing Jerome Stevens Pharms. Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005); Navab-Safavi v. Glassman, 637 F.3d 311, 394 (D.C. Cir. 2011). *See also* Humane Soc'y of the U.S. v. Vilsack, 797 F.3d 4, 8 (D.C. Cir. 2015) ("We accept the factual allegations in the plaintiffs' complaint as true and draw all reasonable inferences from those facts in their favor.").

I. **REPLY**

### A. The Orders Result in Injury in Fact to the Market Monitor.

The Market Monitor agrees with FERC that the standard for establishing Article III standing is for a petitioner to show that it has "suffered injury in fact," which is "an actual or imminent invasion of a legally protected, concrete and particularized interest."[5]

FERC does not properly apply the applicable standard to the facts.

FERC states that "unsuccessfully arguing a dispute before the Commission does not by itself create standing."[6] FERC mischaracterizes the Market Monitor's position. The Market Monitor's basis for standing is that it is harmed by FERC's refusal to enforce a Tariff provision designed to protect its ability to independently perform its function. The only entity harmed by the failure to enforce this provision is the Market Monitor.

Citing *ODEC v. FERC*, FERC claims that the Market Monitor lacks standing: "Because the Market Monitor neither charges nor pays rates subject to Commission jurisdiction, its legal interests are limited to its "contractually

---

[5] Motion at 6, citing Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1157 (D.C. Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); Turlock Irr. Dist. v. FERC, 786 F.3d 18, 23 (D.C. Cir. 2015) (same); *see also ODEC v. FERC* at 1233 ("injury-in-fact to a legally protected interest" is necessary for standing); Belmont Mun. Light Dep't v. FERC, 38 F.4th 173, 185 (D.C. Cir. 2022) (establishing "an injury in fact" has both constitutional and statutory significance).

[6] Motion at 8, citing Kansas Corp. Comm'n v. FERC, 881 F.3d 924, 929 (D.C. Cir. 2018); see also Turlock Irrigation District, 786 F.3rd at 24 (expending resources on litigation or administrative proceedings "does not qualify as an injury in fact" on its own).

assigned tasks" such as "observing the market's operations and then offering recommendations."[7] FERC's conception of what constitutes "a legally protected, concrete and particularized interest" is unduly narrow and ignores the applicable precedent. FERC mischaracterizes the Market Monitor's functions. FERC's reliance on *ODEC v. FERC* is misplaced.

### B. Standing Based on Organizational Interest.

This Court has recognized standing based on an organization's activities.[8] In *PETA v. USDA*, this Court observed: "The United States Supreme Court has made plain that a 'concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests' and thus suffices for standing."[9] This Court has explained its test for standing on this basis:

> To determine whether an organization's injury is 'concrete and demonstrable' or merely a 'setback' to its 'abstract social interests,' Havens Realty Corp., 455 U.S. at 379, we ask, first, whether the agency's action or omission to act 'injured the [organization's] interest' and, second, whether the organization 'used its resources to counteract that harm.'[10]

In *PETA v. USDA*, this Court applied its standard:

---

[7]  Motion at 7, citing Old Dominion Electric Cooperative v. FERC, 892 F.3d 1223, 1233 (D.C. Cir. 2018) (*ODEC v. FERC*).

[8]  *See* People for the Ethical Treatment of Animals v. United States Department of Agriculture, 797 F.3d 1087, 1093 (2015) (*PETA v. USDA*).

[9]  *Id*. at 1093, citing Havens Realty Corp., 455 U.S. at 379.

[10]  *Id*. at 1094, citing Equal Rights Ctr., 633 F.3d at 1140.

> [T]he USDA's refusal to apply the AWA to birds 'perceptibly impaired' PETA's mission in two respects: it 'precluded PETA from preventing cruelty to and inhumane treatment of these animals through its normal process of submitting USDA complaints' and it 'deprived PETA of key information that it relies on to educate the public.'[11]

In *PETA v. USDA*, the Court decided that an agency's refusal to apply the law harmed an organization's interests, including, specifically, because it deprived the organization of "information that it relies on," and that such harm is a basis for standing.

More recently, in *American Anti-Vivisection Society v. USDA*, this Court confirmed the decision in *PETA v. USDA*.[12] The Court held:

> As in *PETA*, then, USDA's alleged inaction has "perceptibly impaired," *id*., the Coalition's organizational interests by depriving it "of key information that it relies on" to fulfill its mission, *PETA*, 797 F.3d at 1094. Indeed, the Coalition's claim for standing is even stronger than was PETA's. Whereas PETA had standing even though it had no legal right to the incident reports it sought[citation omitted], the Coalition seeks standards that it alleges USDA is legally required to promulgate. What's more, the Coalition's alleged injury flows directly from USDA's failure to issue bird-appropriate standards.[13]

---

[11]   *Id*. at 1094.

[12]   *See* American Anti-Vivisection Society v. USDA, 946 F.3d 615 (D.C. Cir. January 10, 2020) (*American Anti-Vivisection Society v. USDA*).

[13]   *Id*. at 1094.

The circumstances in this case are materially similar to those in *PETA v. USDA*. The circumstances in this case are also materially similar to those in *American Anti-Vivisection Society v. USDA*, where the Court even more emphatically determined that the petitioner has standing.

### C. The Market Monitor's Organizational Interests.

The Commission requires PJM, first as an Independent System Operator and later as a Regional Transmission Organization, to have an independent market monitoring function.[14] Commission regulations require that a market monitoring unit perform three core functions: market design, monitoring market participant and administrator behavior and reporting on market performance.[15] The PJM Market Monitoring Plan includes provisions for the Market Monitor to perform all three functions.[16]

Section IV.G, which protects the Market Monitor's ability to participate in stakeholder proceedings, mostly involves the market design function. The Market Monitor does not vote in any stakeholder process. The purpose of Section IV.G is not the protection of voting rights. The Market Monitor fully participates in stakeholder proceedings, presents its own proposals for new or revised rules and actively comments on proposals submitted by others. In some cases, the Market Monitor files complaints seeking changes to the rules and changes to the implementation of the rules. These complaints are often informed by the Market Monitor's participation in the stakeholder process.

---

[14]   *See, e.g.*, 18 CFR § 35.28(g)(3)(i)(A).

[15]   *See* 18 CFR § 35.28(g)(c)(ii) (Core Functions of Market Monitoring Unit).

[16]   *See* Tariff Attachment M § IV.

The predominant function of stakeholder processes is to consider potential changes to the market design. Only the senior standing committees, the Members Committee and the Markets and Reliability Committee, include binding votes on rules changes. Inferior stakeholder committees, subcommittees, task forces and fora have nonbinding indicative votes or do not include voting.

Changes to the PJM Operating Agreement require a stakeholder vote, but changes to the Tariff do not.[17] In some cases PJM only informs stakeholders and provides an opportunity for comment on its filings that it plans to submit without the authorization of a vote, such as filings in compliance with Commission orders and complaints against its own rules that are authorized by a vote of the Board. PJM may also may file changes to the Tariff based only on a vote of the Board. Some of the most significant PJM rule changes proposed by PJM are authorized by a vote of the Board and do not receive the required supermajority vote of the stakeholders. Whether they are the product of a stakeholder vote or a vote of the Board, the Market Monitor actively and independently participates in proceedings at FERC after proposed rules and rules changes are filed with the Commission. In many cases, comments filed by the Market Monitor are decisive in orders approving or rejecting PJM filings, and they are carefully considered even if the FERC does not adopt the Market Monitor's position.

The Market Monitor's participation in the stakeholder process and its contribution to the consideration of market design in the stakeholder process is active. The Market Monitor plays an essential and Tariff defined role. When matters go to the Commission, the Market Monitor is an active participant. The

---

[17]    *See* PJM Operating Agreement §§ 7.7, 8.8 & 10.4.

Market Monitor's role in market design cannot be accurately characterized as that of a passive observer. The Market Monitor requires access to the stakeholder process in order to understand and participate in the development of proposals and guide its independent participation in FERC proceedings that result from the filing of such proposals.

The Tariff appropriately protects the ability of the Market Monitor to participate in stakeholder processes because it is an active participant and relies on its participation to fulfill its mission. No such provision would be needed to protect a passive observer. There would be no reason to exclude a passive observer from any part of the stakeholder process.

### D.  FERC's Reliance on *ODEC v. FERC* Is Misplaced.

FERC relies on *ODEC v. FERC* to support its motion. Such reliance is misplaced. *ODEC v. FERC* includes language indicating that the Market Monitor lacked standing to intervene in that case.[18] The language should not be considered binding because it had no impact of the outcome of the case and did not limit the ability of the Market Monitor to submit a brief explaining its views. The result, upholding the FERC order, was the result supported by the Market Monitor. By granting the Market Monitor amicus curiae status, the Court allowed the Market Monitor to express its reasons for supporting the FERC order.[19] Filing a brief was the only action that Market Monitor sought to take in that proceeding. The Market Monitor's notice and opportunity to be heard were not impaired as a result of

---

[18]    *See ODEC v. FERC* at 1232–1233.

[19]    *Id*. at 1234.

*ODEC v. FERC* was resolved, and the Market Monitor had no reason to continue litigating the question of standing.

The case presented here, however, is entirely distinguishable from *ODEC v. FERC*. The Market Monitor is the only aggrieved entity. The Market Monitor seeks to appeal an order that directly harms the Market Monitor's interest because the FERC has failed to enforce a Tariff provision that exists for the sole purpose of protecting the independence of the Market Monitor and its ability to perform its function. In contrast, the issue in *ODEC v. FERC* was ODEC's effort to waive certain provisions of the market rules retroactively so that ODEC could recover its costs.[20] The Court explained in *ODEC v. FERC*, "The Monitor's professional assignment to monitor the markets so that PJM and its members can promote the market's efficient and successful operation does not invest the Monitor with any legally cognizable rights concerning either how PJM addresses Old Dominion's application for retroactive relief or how Old Dominion complies with the Tariff or Agreement."[21] The Court defined the matter narrowly in terms of ODEC's pecuniary claim against PJM under the market rules. The issue on standing was framed as whether ODEC's claims were sufficiently related to the operation of the

---

[20] *Id*. at 1234 ("Whether Old Dominion wins or loses, the Monitor's ability to observe the market's operations and to make recommendations or to inform potentially interested parties of its observations remains the same. Nor did the Commission's order determine any legal rights belonging to the Monitor or benefit the Monitor in any discernable way. The Monitor thus has no "significant and direct interest" in defending the Commission's denial of Old Dominion's requested relief.[citation omitted] The Monitor faces no "threatened loss" from this court's review").

[21] *Id*. at 1233.

markets, and, therefore, whether the organizational activities of the Market Monitor were injured.

This case does not concern a market participant's claim for pecuniary relief. This case directly concerns the Market Monitor's independence and its ability to perform its Tariff defined functions. There is no opportunity to afford an alternative amicus curiae status. No entity is harmed, and no entity has standing to bring this case, other than the Market Monitor. If the Market Monitor lacks standing, the provisions of the Tariff protecting the independence and capability of the Market Monitor performance and its functions are unenforceable by the Courts.

FERC's reliance on *ODEC v. FERC* is misplaced. The statements on standing in *ODEC v. FERC* do not bind the Court in this matter. Those statements have no relevance to this matter.

### E. Violation of the Tariff Provision at Issue Is a Valid Basis for Standing.

FERC reveals in arguments against standing that it misunderstands this case. FERC argues:

> The Market Monitor has its own private meetings with the PJM Board, and ample access to the PJM Board's decision-making process.
>
> [J]ust because this dispute relates to the Market Monitor personally does not mean that it has a particularized and legally protected interest at stake. The Market Monitor already meets with the PJM Board. … The Market Monitor would also like to attend the Liaison Committee's meetings with the PJM Board. … The Market Monitor may be irritated by the fact that it is not

invited to those additional meetings. But that type of general grievance 'cannot support standing.'[22]

This case is not about a "general grievance" or "irritation" and it is not about what the Market Monitor "would like" and it is not "personal." This case is about the Tariff defined institutional role of the Market Monitor. This case is not about a request of the Market Monitor to have additional meetings with the Board. The Commission has no basis for the irrelevant assertion that the Market Monitor has "ample access to the Board's decision making process." Nor is it about a general assertion that the Market Monitor should be invited to more meetings. The Market Monitor does not need an invitation to participate in stakeholder processes. This case is about the enforcement of a Tariff provision that protects the Market Monitor's Tariff defined ability to participate in stakeholder processes as the Market Monitor "deems appropriate or necessary."

Section IV.G is part of the PJM Market Monitoring Plan, which serves as the Market Monitor's charter and defines and protects its mission. The independence of the Market Monitor is essential to its ability to perform its function. The provision at issue in this case, consistent with the Market Monitor's market design function and its independence ensures that the Market Monitor has direct unfiltered access to information and provides that the Market Monitor, and no one else, may determine whether participation is "necessary or appropriate."

FERC argues:

> The Liaison Committee, though, is not one of PJM's markets. … In addition, the Market Monitor has many

---

[22] Motion at 8, citing Environmental Def. Fund v. FERC, 2 F.4th 953, 970 (D.C. Cir. 2021).

tools for obtaining information and data related to its functions.[23]

That the Liaison Committee is not a PJM market is not an issue in dispute in this case. Nor is the ability of the Market Monitor to privately meet with the Board or to obtain market data at issue.

The provision at issue in this case specifically protects the Market Monitor's ability to participate in stakeholder processes where market design issues are discussed. The provision does not concern access to market information and data. Other provisions protect the Market Monitor's access to market information. When and if PJM were to violate those provisions, those provisions should also be enforced by the Commission in order to protect the Market Monitor's ability to perform its monitoring and reporting functions.

Citing *ODEC v. FERC*, FERC observes that "the Tariff itself is not a contract with the Market Monitor—its consulting contract is a separate agreement" and argues, "[l]acking any 'law that vests it with independent legal rights,' the Market Monitor here has no legally cognizable right to Liaison Committee attendance that supports its standing."[24] But this case is not about the assertion of rights based on a contract. This case is about enforcement of a Commission approved Tariff provision that protects the ability of the Market Monitor to participate in stakeholder processes. The Tariff is the law.[25] The law is violated when PJM excludes the Market Monitor from participation in stakeholder

---

[23]   Motion at 7.

[24]   See ODEC v. FERC at 1234.

[25]   *See, e.g.*, 306 U.S. 516, 520 (1939).

- 13 -

processes contrary to the explicit language of the filed Tariff. The Market Monitor is not a creature of contract. The provision at issue is a part of the PJM Market Monitoring Plan, the Market Monitor's charter, that is part of the Tariff. Commission orders require PJM to have a Market Monitor. The PJM Market Monitoring Plan, consistent with FERC regulatory requirements, assigns to the PJM Board, without the involvement of PJM Staff or market participants, authority and responsibility to approve the Market Monitor's budget and to propose to terminate, retain or replace the Market Monitor.[26] The Board fulfilled its obligations under this provision by entering into a contract with Monitoring Analytics, LLC, to serve as the Market Monitor. These same provisions provide a separate basis for the Market Monitor's standing to file this appeal.

In addition to interfering with the Market Monitor's role in market design, the exclusion of the Market Monitor from the Liaison Committee harms the Market Monitor because it deprives the Market Monitor of notice and opportunity to be heard concerning complaints about the Market Monitor's performance of its function to the Board, which has the sole responsibility to implement the provisions of the PJM Market Monitoring Plan that relate to the term and termination of the Market Monitor.[27]

The contract referenced by PJM, the Market Monitoring Service Agreement, provides for the Board to evaluate whether the Market Monitor is "adequately

---

[26] Tariff Attachment M § III.D & F; 18 CFR § 35.28(g)(3)(i)(D).

[27] Tariff Attachment M § III.D & F.

performing its functions."[28] The first criterion for review of adequate performance is "[m]aintaining independence."[29] The criterion states:

> In order for the PJM Board to ensure IMM is adequately performing the functions and responsibilities under the Agreement, the PJM Board will review and evaluate whether IMM is providing the Services in an independent manner, without improper influence from PJM management, PJM staff, market participants, state commissions, or other stakeholders. The PJM Board expects IMM to keep it, the Commission, stakeholders and the public fully informed and that IMM will express its professional opinions, consistent with its independence, even where such positions differ from the positions of PJM management, PJM staff, market participants, state commissions, or other stakeholders.

The independence requirement means that the Market Monitor may be required to take positions on market design issues that a Market Participant or sector(s) of Market Participants do not like, and may, in some cases, perceive as threatening to their interests. As the Commission noted in its key order intended to strengthen the market monitoring function, the Market Monitor may in performing its functions be required to perform "what is often viewed as a hostile act."[30] The Members Committee selects the members of the Board.[31] The Market Monitor has

---

[28] *See* Market Monitoring Services Agreement ("MMSA") § 27.

[29] *Id*.

[30] *Wholesale Competition in Regions with Organized Electric Markets*, Order No. 719, FERC Stats. & Regs. ¶ 31,281 at 372–373 (2008) ("Order No. 719"), *order on reh'g*, Order No. 719-A, FERC Stats. & Regs. ¶ 31,292 (2009), *reh'g denied*, Order No. 719-B, 129 FERC ¶ 61,252 (2009).

[31] *See* PJM Operating Agreement § 8.8(i).

interest in participating in Liaison Committee meetings in order to have notice of and opportunity to respond to statements made in discussions between market participants and the Board about the Market Monitor's performance.

That discussions of the Market Monitor's performance have occurred at Liaison Committee meetings is not speculative. The agenda for several Liaison Committee meetings include items on the topic of the Market Monitor's performance.[32] The Market Monitor does not know exactly what was communicated to the Board at those meetings and has not had an opportunity to respond. Liaison Committee attendees understand and have represented to the Market Monitor that they are prohibited from discussing any matters from the Liaison Committee meetings with any non attendees, including the Market Monitor.

Section IV.G operates to protect the Market Monitor's independence by allowing it to provide its views on allegations to the Board concerning its performance. The Market Monitor should have standing to seek enforcement of the provision in the Tariff that protects it.

### F. The Market Monitor Is Harmed in Part Because It Must Expend Resources That Could Have Been Conserved.

Part of a showing of organizational standing is a showing that the organization had "to devote resources to checking or neutralizing the … adverse impact."[33] In this case, as a result of the failure to enforce Section IV.G, the Market

---

[32] See Independent Market Monitor for PJM v. PJM, 186 FERC ¶ 61,163 at P 60 (2024).

[33] *See, e.g.*, *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27, 31 (D.C. Cir. 1990) (holding fair housing organizations that alleged "defendants' preferential advertising tended to steer black home buyers and renters away from the advertised

Monitor has been forced to expend resources that it should have not had to expend. By attending stakeholder processes, the Market Monitor knows exactly what information is provided and can respond immediately in the presence of all in attendance. When the Market Monitor is prevented from attending, it has to expend resources to indirectly surmise what information was discussed and who was attending. In addition, the Market Monitor has expended significant effort in trying to convince PJM, and then the Commission, to correctly implement Section IV.G.

The Market Monitor has also incurred costs to litigate this case here. The Market Monitor is aware that litigation costs may not be included as a basis for standing because there are decisions where the courts have refused to consider such costs.[34] Such costs have not been considered based the on concern that any petitioner could use litigation costs to manufacture a burden that would not otherwise exist.[35] The distinguishing feature here is that the Tariff provision here, has the express purpose of the protecting the Market Monitors' ability to participate in stakeholders processes. The Market Monitor has been forced to

---

complexes" had standing, where defendants' conduct "impelled the organizations to devote resources to checking or neutralizing the ads' adverse impact"); *Havens Realty Corp.*, 455 U.S. at 378–79.

[34]   *See PETA v. USDA* at 1093 ("an organization's diversion of resources to litigation or to investigation in anticipation of litigation is considered a 'self-inflicted' budgetary choice that cannot qualify as an injury in fact for purposes of standing."), citing *Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011); *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit.").

[35]   *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

litigate this matter in order to obtain the protection this provision exists to provide. This is not a case where it would be reasonable to determine that litigation costs incurred by the Market Monitor are self-inflicted or are an attempt to manufacture harm.

### G. The Harm Is Redressable.

The Market Monitor seeks enforcement of Section IV.G. Enforcement of Section IV.G. Such enforcement will protect the ability of the Market Monitor to attend future meetings of the Liaison Committee. Participants should be directed to make meeting minutes and presentations available and should be permitted to discuss the content of discussions in meetings of the Liaison Committee from which the Market Monitor was unlawfully excluded. Harm resulting from violation of Section IV.G is redressable.

### H. FERC's Position on Standing Has No Reasonable Limit.

FERC's argument on standing has no reasonable limit. If accepted, its argument would exclude entities that should be parties to this proceeding. PJM Interconnection, L.L.C. has motioned to intervene in this case, but PJM could not pass any reasonable test for standing that the Market Monitor would fail.[36] Other stakeholders and market participants have petitioned to intervene in this case. What is their "legally protected, concrete and particularized interest" in whether or not

---

[36] *Cf. Barnes v. Kline*, 759 F.2d 21, 67 n.1 (D.C. Cir. 1984) ("The Executive Branch conceded at oral argument that the Senate has standing to sue in this suit. Similarly, … the Executive Branch conceded that either House of Congress would have standing to sue based on injury to its lawmaking powers. … No reason appears why the Executive should oppose standing for individual legislators but concede as to a House. The constitutional problems would seem to be identical.").

the provision that protects the Market Monitor's ability to participate in stakeholder processes is enforced?

For the particular Tariff provision in this case, the Market Monitor is the only entity that could meet the test for standing. If the Market Monitor does not have standing, none of the Tariff provisions that protect the Market Monitor's concrete and particular interests would be enforceable. The standing of the Market Monitor to file this appeal and to protect its interest in performing its mission and to protect its independence should be affirmed.

## CONCLUSION

The Market Monitor respectfully requests that FERC's motion to dismiss be denied.

Respectfully submitted,

Jeffrey W. Mayes
General Counsel
Monitoring Analytics, LLC
2621 Van Buren Avenue, Suite 160
Eagleville, Pennsylvania 19403
(610) 271-8053
*jeffrey.mayes@monitoringanalytics.com*

**CERTIFICATE OF SERVICE**

In accordance with Fed. R. App. P. 25(d), I hereby certify that I have this 15th day of July, 2024, caused the foregoing document to be served on all parties or their counsel of record through the CM/ECF system:

*/s/ Jeffrey Mayes*

Jeffrey W. Mayes
General Counsel
Monitoring Analytics, LLC