ORAL ARGUMENT NOT SCHEDULED

# In the United States Court of Appeals
# for the District of Columbia Circuit

### Case No. 24-1164

_____

INDEPENDENT MARKET MONITOR FOR PJM
*Petitioner,*

*v.*

FEDERAL ENERGY REGULATORY COMMISSION
*Respondent.*

_____

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

_____

FINAL BRIEF OF PETITIONER
INDEPENDENT MARKET MONITOR FOR PJM

_____

Jeffrey W. Mayes
General Counsel
2621 Van Buren Avenue, Suite No. 160
Monitoring Analytics, LLC
Eagleville, PA 19403
610-271-8053

*Counsel for the Independent Market
Monitor for PJM*

April 25, 2025

## <u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>

Pursuant to Circuit Rule 28(a)1, Respondent submits:

### A.    Parties and Amici

The following is a list of all parties, movant-intervenors, and amici who have appeared in this Court in this petition:

| | |
|---|---|
| Petitioner: | The Independent Market Monitor for PJM |
| Respondent | Federal Energy Regulatory Commission |
| Movant-Intervenors: | PJM Interconnection, L.L.C. |
| | The Dayton Power and Light Company d/b/a AES Ohio |
| | Exelon Corporation |
| | PPL Electric Utilities Corporation |
| Amici: | None |

### B.    Rulings Under Review

The Market Monitor has petitioned for review of the following orders of the Commission:

(1) *Independent Market Monitor v. PJM Interconnection, L.L.C., et al.*, 186 FERC ¶ 61,163 (2024).

(2) *Independent Market Monitor v. PJM Interconnection, L.L.C., et al.*, 187 FERC ¶ 62,070 (2024).

i

**C.     Related Cases**

This case has not been before this Court or any other court.

## <u>DISCLOSURE STATEMENT</u>

Monitoring Analytics, LLC, acting in its capacity as the Independent Market Monitor for PJM, states, per Circuit Rule 26.1, that it has no parent corporation. Because Monitoring Analytics, LLC, does not issue stock, no corporation can own ten percent or more of its stock.

.

## <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

DISCLOSURE STATEMENT ................................................................ ii

TABLE OF AUTHORITIES .................................................................v

GLOSSARY.................................................................................. vii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUE .............................................................2

STATUTES AND REGULATIONS........................................................2

STATEMENT OF THE CASE...............................................................2

SUMMARY OF THE ARGUMENT .......................................................3

STANDING ....................................................................................4

I.      THE MARKET MONITOR HAS STANDING BECAUSE
        FAILURE TO ENFORCE A TARIFF REGULATION DESIGNED
        TO PROTECT THE MARKET MONITOR RESULTS IN INJURY
        IN FACT ..............................................................................4

        A.      The Market Monitor Has Standing Because It Has Suffered
                Injury in Fact .............................................................7

                1.      The Market Monitor Has Standing Based on the
                        Invasion of a Legally Protected Interest .....................7

                2.      The Market Monitor's Injury Is Concrete and
                        Particularized .........................................................10

                        a.      The Market Monitor Has a Concrete and
                                Particularized Interest to Protect PJM's
                                Competitive Market Design and to Provide
                                Accurate Reports ............................................13

        b.     The Market Monitor Has a Concrete and Particularized Interest to Participate in Liaison Committee Meetings Where Members Discuss the Market Monitor's Performance with the Board ................................................................15

    B.    The Failure to Enforce the Tariff Caused Harm to the Market Monitor ..................................................................19

    C.    The Harm Is Redressable ................................................19

ARGUMENT ..............................................................................20

II.    THE PETITION SHOULD BE GRANTED IN ORDER TO ENFORCE THE TARIFF REGULATIONS THAT PROTECT THE MARKET MONITOR FROM EXCLUSION FROM STAKEHOLDER COMMITTEE MEETINGS ...........................20

    A.    Relief Should Be Granted Based on the Plain Language of the Tariff..................................................................................20

    B.    Enforcement of the Tariff Takes Precedence Over Statements in the Liaison Committee Charter .......................................25

CONCLUSION ...........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Anti-Vivisection Society v. USDA*,
   946 F.3d 615 (D.C. Cir. January 10, 2020) ........................................12

*AT&T v. Central Office Tel., Inc.*,
   524 U.S. 214 (1998) ..............................................................................25

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) ............................................................6

*Equal Rights Center v. Post Properties*,
   633 F.3d 1136 (D.C. Cir. 2011) ..........................................................11

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ...................................................................... 11, 14

*Information Handling Services v. Defense Automated Printing Services*,
   338 F.3d 1024 (D.C. Cir. 2003) .........................................................7, 8

*Lowden v. Simonds-Shields-Lonsdale Grain Co.*,
   306 U.S. 516 (1939) ..............................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................6, 7

*Old Dominion Electric Cooperative v. FERC*,
   892 F.3d 1223 (2018) .......................................................................6, 10

*People for the Ethical Treatment of Animals v.*
   *United States Department of Agriculture*,
   797 F.3d 1087 (2015) ............................................................... 10, 11, 12

*Spann v. Colonial Vill., Inc.*,
   899 F.2d 24 (D.C. Cir. 1990) ..............................................................14

*Turlock Irr. Dist. v. FERC*,
   786 F.3d 18 (D.C. Cir. 2015) ................................................................6

*United States v. Interstate Com. Comm'n*,
   198 F.2d 958 (D.C. Cir. 1952) ........................................................7, 21

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................7

*Wholesale Competition in Regions with Organized Electric* Markets,
   Order No. 719, FERC Stats. & Regs. ¶31,281 (2008), *order on reh'g*,
   Order No. 719-A, FERC Stats. & Regs. ¶ 31,292 *(2009), reh'g denied*,
   Order No. 719-B, 129 FERC ¶ 61,2 ................................................18

## Statutes & Other Authorities:

16 U.S.C. § 824e ...........................................................................................1

16 U.S.C. § 825l ............................................................................................1

18 C.F.R. § 35.28(g)(3)(i)(A) .....................................................................13

18 C.F.R. § 35.28(g)(3)(i)(D) .....................................................................16

18 C.F.R. § 35.28(g)(c)(ii) ..........................................................................13

# **GLOSSARY**

| | |
|---|---|
| Addendum | The addendum providing facts in support of the Market Monitor's argument for standing, including the Declaration of Dr. Joseph E. Bowring and supporting attachments. The Addendum also includes, for the convenience of the Court, Tariff regulations cited in this pleading |
| Board | PJM Board of Managers |
| Complaint | The complaint pursuant to Section 206 of the Federal Power Act filed by the Market Monitor against PJM on March 24, 2024, in FERC Docket No. EL23-50 (JA A6-A41) |
| FERC or Commission | Respondent Federal Energy Regulatory Commission |
| March 1st Order | *Independent Market Monitor v. PJM Interconnection, L.L.C., et al.*, 186 FERC ¶ 61,163 (2024) (JA A71-A117) |
| Market Monitor | Monitoring Analytics, LLC, acting in its capacity as the Independent Market Monitor for PJM. The Market Monitor is also known as the "Market Monitoring Unit," "MMU" and "IMM" |
| MMSA | The Market Monitoring Services Agreement, tariff filed and approved by FERC pursuant to which Monitoring Analytics, LLC, provides market monitoring services to PJM |
| Motion to Dismiss | The Motion to Dismiss filed by FERC in this proceeding on July 8, 2024 (Document #2063310) |
| PJM | PJM Interconnection, L.L.C. |
| Operating Agreement | The PJM Operating Agreement, a tariff filed with and approved by the FERC, that includes provisions for governance of the L.L.C. |

| | |
|---|---|
| Rehearing Order | *Independent Market Monitor v. PJM Interconnection, L.L.C., et al.*, 187 FERC ¶ 62,070 (2024) (JA A125) |
| Tariff | PJM Open Access Transmission Tariff, including Attachment M (PJM Market Monitoring Plan), the rules for the PJM market monitoring function performed by the Market Monitor |

## **JURISDICTIONAL STATEMENT**

(i)    The Commission had jurisdiction under 16 U.S.C. § 824e, which tasks it to rule on complaints.

(ii)    This Court has jurisdiction under Section 313 of the Federal Power Act, 16 U.S.C. § 825l, which authorizes it to review orders issued by the Commission. The Commission issued its March 1st Order on March 1, 2024 (JA A71-A117). On March 29, 2024, the Market Monitor timely sought rehearing (JA A118-A124). The Commission denied the rehearing request in the Rehearing Order issued April 29, 2024 (JA A125).

(iii)    On May 29, 2024, the Market Monitor timely petitioned this Court for review in this proceeding.

(iv)    The Commission's orders are final for purposes of judicial review.

- 1 -

## STATEMENT OF THE ISSUE

Petitioner raises the following issue: Whether Section IV.G of Attachment M to the PJM Open Access Transmission Tariff protects the ability of the Market Monitor to participate in PJM Liaison Committee meetings.

## STATUTES AND REGULATIONS

The following tariffs are included in the Addendum: (i) Tariff, Attachment M; (ii) MMSA § 27; and (iii) Operating Agreement §§ 7.7, 8.8 & 10.4.

## STATEMENT OF THE CASE

Prior to 2018, the Market Monitor attended Liaison Committee meetings. Then, under the guise of enforcing the Liaison Committee charter, on September 27, 2018, the Members Committee voted to exclude the Market Monitor from future Liaison Committee meetings. Since that time, PJM has refused to permit the Market Monitor to register for or participate in meetings of the Liaison Committee.

The Market Monitor filed a Complaint (JA A6-A41) with FERC seeking an order enforcing Section IV.G of Attachment M to the Tariff protecting the ability of the Market Monitor to participate in PJM committee meetings and stakeholder processes, including the Liaison Committee. FERC denied the Complaint in the March 1st Order (JA A71-A117) and the Rehearing Order (JA A125).

On May 29, 2024, the Market Monitor petitioned this Court for review of FERC's actions.

## SUMMARY OF THE ARGUMENT

The Tariff includes a provision stating: "The Market Monitoring Unit may, as it deems appropriate or necessary to perform its functions under this Plan, participate (consistent with the rules applicable to all PJM stakeholders) in stakeholder working groups, committees or other PJM stakeholder processes." The PJM Liaison Committee is a PJM "committee," and a "PJM stakeholder process." In 2018, PJM began excluding the Market Monitor from Liaison Committee meetings. The Market Monitor filed the Complaint, which FERC denied. Commissioner Christie dissented.

The Market Monitor has standing because it has suffered an invasion of a legally protected interest, the substantive Tariff defined right to participate in Liaison Committee meetings. The Market Monitor has suffered a concrete and particularized injury because FERC's failure to enforce the Tariff harms the Market Monitor's organizational interest and significantly hinders its ability to perform its mission.

The petition should be granted and the March 1st Order and the Rehearing Order set aside because FERC has failed to enforce a Tariff regulation intended to

protect the Market Monitor from exclusion from PJM committees and stakeholder processes, such as the Liaison Committee, and the Market Monitor has been and continues to be unlawfully excluded from Liaison Committee meetings. The Tariff regulation protecting the Market Monitor from the exact invasion of the Market Monitor's rights that has occurred should be enforced.

## **STANDING**

## I.  **THE MARKET MONITOR HAS STANDING BECAUSE FAILURE TO ENFORCE A TARIFF REGULATION DESIGNED TO PROTECT THE MARKET MONITOR RESULTS IN INJURY IN FACT.**

The Market Monitor has standing to file this petition. The Tariff recognizes that in order to perform its mission, the Market Monitor must be able to attend meetings of stakeholder committees and other stakeholder processes at its sole discretion. The Liaison Commission is a stakeholder committee and a stakeholder process.[1] The Liaison Committee is included in PJM's manual providing rules for the PJM stakeholder committees and other stakeholder processes.[2] PJM's webpage for stakeholder committees provides information and tools for registering and participating in stakeholder committee meetings, including Liaison Committee

---

[1]    *See* Addendum, Declaration of Joseph E. Bowring at paras. 9–13.

[2]    *See id.* para. 12.

meetings.[3] The particular purpose of the Liaison Committee is to allow PJM Members to communicate directly to the Board."[4] This makes meetings of the Liaison Committee particularly important because the Board exercises significant influence over filings with the Commission that determine PJM's market design.[5] Communications to the Board are also important to the Market Monitor because the Board is solely responsible to review the performance of the Market Monitor under provisions of the Tariff that govern the potential termination and replacement of Monitoring Analytics, LLC, in its role as the Market Monitor.[6]

The standard for establishing Article III standing is for a petitioner to show that it has "suffered injury in fact," which is "an actual or imminent invasion of a

---

[3]    *See id*. para. 13.

[4]    *See id*. para. 14.

[5]    *See id*. para. 10.

[6]    *See* Tariff, Attachment M § III.F (Included in Addendum).

legally protected, concrete and particularized interest."[7] In addition, *Lujan* requires a showing of causation and redressability.[8]

The Market Monitor has standing because it has been and continues to be harmed by FERC's refusal to enforce a Tariff regulation essential to protecting the Market Monitor's ability to independently perform its mission. FERC's failure to enforce a Tariff regulation protecting the Market Monitor's ability to participate in a PJM stakeholder committee creates an actual or imminent invasion of a legally protected, concrete and particularized interest. Section IV.G of Attachment M to the Tariff protects the Market Monitor's ability to participate in the stakeholder process and prevents injury to the Market Monitor's ability to perform its organizational mission. The purpose of the Tariff regulation is to prevent exactly

---

[7]     See Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1157 (D.C. Cir. 2005), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (Lujan); Turlock Irr. Dist. V. FERC, 786 F.3d 18, 23 (D.C. Cir. 2015); see also Old Dominion Electric Cooperative v. FERC, 892 F.3d 1223, 1233 (2018) (ODEC) ("injury-in-fact to a legally protected interest" is necessary for standing).

[8]     *Lujan* at 560 ("Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[a'e] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.' [citation omitted] Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'").

the type of injury that has been and continues to be inflicted on the Market Monitor.

### A. The Market Monitor Has Standing Because It Has Suffered Injury in Fact.

#### 1. The Market Monitor Has Standing Based on the Invasion of a Legally Protected Interest.

This Court has recognized standing where the petitioner's grievance is a right created by statute.[9] The Tariff regulation at issue in this case creates a substantive right that should be treated the same as a statutory right. Section V.G of Attachment M to the Tariff is a tariff regulation approved by FERC, and is, therefore, the law.[10] Because the Tariff is written by PJM, and it is responsible for the language filed with the Commission, "all ambiguities or reasonable doubts as to its meaning must be resolved against" PJM.[11]

---

[9]   *See Lujan* at 589 (Kennedy, Souter, concurring), citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing…."); *Information Handling Services v. Defense Automated Printing Services*, 338 F.3d 1024, 1029–1030 (D.C. Cir. 2003) ("If we assume, as we must at this stage, that IHS has read the statute correctly, then DAPS' conduct has indeed "invaded … a legally protected interest," and the plaintiff has standing to raise its claim"), citing *Lujan* at 560.

[10]  See, e.g., Lowden v. Simonds-Shields-Lonsdale Grain Co., 306 U.S. 516, 520 (1939).

[11]  See United States v. Interstate Com. Comm'n, 198 F.2d 958, 966 (D.C. Cir. 1952).

Section IV.G of Attachment M to the Tariff provides:

> The Market Monitoring Unit may, as it deems appropriate or necessary to perform its functions under this Plan, participate (consistent with the rules applicable to all PJM stakeholders) in stakeholder working groups, committees or other PJM stakeholder processes.

This Tariff regulation specifically protects the Market Monitor's ability to participate in the PJM stakeholder process, which includes meetings of the Liaison Committee, as the Market Monitor deems "appropriate or necessary."

In analyzing whether the Market Monitor has standing at the dismissal stage, the Court must assume that the Market Monitor has stated a valid legal claim and accept the Market Monitor's factual allegations as true.[12] The record of FERC's proceeding below and the attached Addendum provide detailed facts demonstrating a violation of the Tariff.

FERC reveals in arguments against standing that it misunderstands this case. FERC argues:

> The Market Monitor has its own private meetings with the PJM Board, and ample access to the PJM Board's decision-making process. … The Market Monitor may be irritated by the fact that it is not invited to those additional

---

[12]  *See Info. Handling Servs* at 1029 (citations omitted).

> meetings. But that type of general grievance 'cannot support standing.'[13]

This case is not about a "general grievance" or "irritation" and it is not about what the Market Monitor "would like" and it is not "personal." This case is not about a request of the Market Monitor to have additional meetings with the Board. The Commission has no basis for the irrelevant assertion that the Market Monitor has "ample access to the Board's decision making process." Nor is this case about a general assertion that the Market Monitor should be invited to more meetings.

This case is about the enforcement of a Tariff regulation that protects the Market Monitor's Tariff defined ability to participate in stakeholder processes as the Market Monitor solely "deems appropriate or necessary." The drafters of that Tariff regulation chose to include it when they knew or should have known that the Market Monitor may have the opportunity to meet with the Board separately.

FERC's reliance on *ODEC* to support its argument against standing is misplaced.[14] *ODEC* had nothing to do with the enforcement of Tariff provisions that specifically protect the Market Monitor. Language in *ODEC* about the Market Monitor's standing in that case should not be considered binding because it had no impact on the outcome of the case and did not preclude the Market Monitor from

---

[13]    *See* Motion to Dismiss at 7.

[14]    *See* Motion to Dismiss at 6–9.

submitting a brief explaining its views.[15] The result, upholding the FERC order, was the result supported by the Market Monitor.

The Market Monitor includes in the Declaration of Dr. Joseph E. Bowring at para. 17, in the attached Addendum, a specific recent example of when the Market Monitor's participation in stakeholder meetings enabled it to fulfill its mission. The Declaration provides evidentiary support for the Market Monitor's argument that the Market Monitor's ability to perform its mission is harmed when Section IV.G of Attachment M to the Tariff is not enforced.

The Tariff regulation at issue in this case, consistent with the Market Monitor's market design function and its independence, ensures that the Market Monitor has direct unfiltered access to information and provides that the Market Monitor, and no one else, may determine whether participation is "necessary or appropriate."

### 2. The Market Monitor's Injury Is Concrete and Particularized.

This Court has recognized standing based on harm to an organization's interests and activities.[16] In *PETA*, this Court observed: "The United States

---

15    *See ODEC* at 1232–1233.

16    See People for the Ethical Treatment of Animals v. United States Department of Agriculture, 797 F.3d 1087, 1093 (2015) (PETA).

Supreme Court has made plain that a 'concrete and demonstrable injury to [an] organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests' and thus suffices for standing."[17] This Court has explained its test for standing on this basis:

> To determine whether an organization's injury is 'concrete and demonstrable' or merely a 'setback' to its 'abstract social interests,' Havens Realty Corp., 455 U.S. at 379, we ask, first, whether the agency's action or omission to act 'injured the [organization's] interest' and, second, whether the organization 'used its resources to counteract that harm.'[18]

In *PETA*, this Court applied its standard:

> [T]he USDA's refusal to apply the AWA to birds 'perceptibly impaired' PETA's mission in two respects: it 'precluded PETA from preventing cruelty to and inhumane treatment of these animals through its normal process of submitting USDA complaints' and it 'deprived PETA of key information that it relies on to educate the public.'[19]

The Court decided in *PETA* that an agency's refusal to apply the law harmed an organization's interests, including, specifically, because it deprived the

---

17    *Id*. at 1093, citing *Havens Realty Corp.*, 455 U.S. at 379.

18    *Id*. at 1094, citing *Equal Rights Ctr.*, 633 F.3d at 1140.

19    *Id*. at 1094.

organization of "information that it relies on," and that such harm is a basis for standing.

More recently, in *American Anti-Vivisection Society v. USDA*, this Court confirmed the decision in *PETA*.[20] The Court held:

> As in *PETA*, then, USDA's alleged inaction has "perceptibly impaired," *id*., the Coalition's organizational interests by depriving it "of key information that it relies on" to fulfill its mission, *PETA*, 797 F.3d at 1094. Indeed, the Coalition's claim for standing is even stronger than was PETA's. Whereas PETA had standing even though it had no legal right to the incident reports it sought[citation omitted], the Coalition seeks standards that it alleges USDA is legally required to promulgate. What's more, the Coalition's alleged injury flows directly from USDA's failure to issue bird-appropriate standards.[21]

The circumstances in this case are materially similar to those in *PETA*, where the failure to enforce the law harmed the petitioner's organizational interests and gave standing. The circumstances in this case are also materially similar to those in *American Anti-Vivisection Society*, where the Court even more emphatically determined that the petitioner has standing.

---

[20]    See American Anti-Vivisection Society v. USDA, 946 F.3d 615 (D.C. Cir. January 10, 2020) (American Anti-Vivisection Society).

[21]    *Id*. at 619.

a. **The Market Monitor Has a Concrete and Particularized Interest to Protect PJM's Competitive Market Design and to Provide Accurate Reports.**

The Commission's own decisions and rules require PJM, first as an Independent System Operator and later as a Regional Transmission Organization, to implement an independent market monitoring function.[22] Commission rules require a market monitoring unit to perform three core functions: (i) market design, (ii) monitoring market participant and administrator behavior, and (iii) reporting on market performance.[23] The Tariff also requires the Market Monitor to perform all three functions.[24]

Section IV.G of Attachment M to the Tariff, which protects the Market Monitor's ability to participate in stakeholder proceedings like the Liaison Committee, primarily involves the market design function. The Market Monitor provides additional details on the nature of the Market Monitor's participation in PJM committees and other stakeholder processes, including the Liaison Committee, prior to 2018 in the Addendum, in the Declaration of Dr. Joseph E. Bowring at paras. 14–19.

---

[22]   *See, e.g.*, 18 CFR § 35.28(g)(3)(i)(A).

[23]   *See* 18 CFR § 35.28(g)(c)(ii) (Core Functions of Market Monitoring Unit).

[24]   *See* Tariff Attachment M § IV (Included in Addendum).

The Market Monitor participates in the stakeholder process and actively contributes to the consideration of market design in the stakeholder process. The Market Monitor plays an essential and tariff defined role. When matters go to the Commission, the Market Monitor is an active participant. The Market Monitor routinely files pleadings, and, at times, complaints seeking market rule improvements, directly with the Commission. The Market Monitor's role in market design cannot be accurately characterized as that of a passive observer. The Market Monitor requires access to the stakeholder process, including the Liaison Committee, to understand and participate in the development of proposals and guide its independent participation in FERC proceedings that result from the filing of such proposals.

Part of a showing of organizational standing is a showing that the organization had "to devote resources to checking or neutralizing the … adverse impact."[25] In this case, as a result of FERC's failure to enforce Section IV.G of Attachment M to the Tariff, the Market Monitor has been forced to expend resources that it should not have had to expend. By participating in stakeholder

---

[25] *See, e.g.*, *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27, 31 (D.C. Cir. 1990) (holding fair housing organizations that alleged "defendants' preferential advertising tended to steer black home buyers and renters away from the advertised complexes" had standing, where defendants' conduct "impelled the organizations to devote resources to checking or neutralizing the ads' adverse impact"); *Havens Realty Corp.*, 455 U.S. at 378–79.

processes, the Market Monitor knows exactly what information is provided and can respond immediately in the presence of all in attendance. When the Market Monitor is prevented from attending, it has to expend resources to indirectly surmise the information and positions presented and the Board's responses. Stakeholders are directed not to discuss any matters that are discussed in Liaison Committee meetings with any non attendee, including the Market Monitor.[26] In addition, the Market Monitor has expended significant effort in trying to convince PJM, and then the Commission, to correctly implement Section IV.G of Attachment M to the Tariff.

### b. The Market Monitor Has a Concrete and Particularized Interest to Participate in Liaison Committee Meetings Where Members Discuss the Market Monitor's Performance with the Board.

The exclusion of the Market Monitor from the Liaison Committee harms the Market Monitor because it deprives the Market Monitor of notice and opportunity to be heard concerning complaints about the Market Monitor's performance of its mission to the Board, which has the sole responsibility to review the Market

---

[26]    *See* Addendum, Declaration of Joseph E. Bowring at para. 14.

Monitor's performance, with potential for termination and replacement based on such review.[27]

The PJM Market Monitoring Plan, consistent with FERC regulatory requirements, assigns to the PJM Board, without the involvement of PJM Staff or market participants, authority and responsibility to propose to terminate, retain or replace the Market Monitor.[28] The Board fulfilled its obligations under the Tariff by entering into a market monitoring services agreement (MMSA) with Monitoring Analytics, LLC, to serve as the Market Monitor. The MMSA is a tariff filed with and approved by the Commission.[29] These Tariff regulations about the Board's authority with respect to the Market Monitor provide a separate basis for the Market Monitor's standing to file this petition.

---

[27]    Tariff Attachment M § III.F (Included in Addendum).

[28]    Tariff Attachment M § III.D & F; 18 CFR § 35.28(g)(3)(i)(D) (Included in Addendum).

[29]    *See PJM Interconnection, L.L.C.*, Delegated Letter Order, Docket No. ER18-2402-000 (November 5, 2018).

The MMSA authorizes the Board to evaluate whether the Market Monitor is "adequately performing its functions."[30] The first criterion for review of adequate performance is "[m]aintaining independence."[31] The criterion states:

> In order for the PJM Board to ensure IMM is adequately performing the functions and responsibilities under the Agreement, the PJM Board will review and evaluate whether IMM is providing the Services in an independent manner …. The PJM Board expects IMM to keep it, the Commission, stakeholders and the public fully informed and that IMM will express its professional opinions, consistent with its independence, even where such positions differ from the positions of PJM management, PJM staff, market participants, state commissions, or other stakeholders.[32]

The independence requirement means that the Market Monitor may be required to take positions on market design issues that a Market Participant or sector(s) of Market Participants do not like, and may, in some cases, perceive as threatening to their interests. As the Commission noted in its key order intended to strengthen market monitoring, the Market Monitor may in performing its mission

---

[30]    *See* MMSA § 27. Monitoring Analytics, LLC, performs the market monitoring function for PJM provided in the PJM Market Monitoring Plan, pursuant to the MMSA. The MMSA is not just a private agreement (Included in Addendum).

[31]    *Id*.

[32]    *Id*.

be required to perform "what is often viewed as a hostile act."[33] The Members Committee selects the members of the Board through a voting process.[34] The Market Monitor needs to participate in Liaison Committee meetings in order to have notice of and opportunity to respond to statements made in discussions between market participants and the Board about the Market Monitor's performance.

That discussions of the Market Monitor's performance have occurred at Liaison Committee meetings is not speculative. The agenda for every Liaison Committee meeting in 2024 to date includes the contract with the Market Monitor as a topic.[35] The Market Monitor does not know what was communicated to the Board at those meetings and thus has not had an opportunity to respond. Liaison Committee attendees understand and have represented to the Market Monitor that they are prohibited from discussing any matters from the Liaison Committee meetings with any non attendees, including the Market Monitor.[36]

---

[33] *Wholesale Competition in Regions with Organized Electric Markets*, Order No. 719, FERC Stats. & Regs. ¶ 31,281 at 372–373 (2008) ("Order No. 719"), *order on reh'g*, Order No. 719-A, FERC Stats. & Regs. ¶ 31,292 (2009), *reh'g denied*, Order No. 719-B, 129 FERC ¶ 61,252 (2009).

[34] *See* PJM Operating Agreement § 8.8(i) (Included in Addendum).

[35] *See* Addendum, Declaration of Joseph E. Bowring at para. 15.

[36] *See id.* at para. 14.

- 18 -

Section IV.G of Attachment M of Tariff operates to protect the Market Monitor's independence by allowing it to provide its views on allegations to the Board concerning its performance. The Market Monitor should have standing to seek enforcement of the provision in the Tariff that protects it.

**B. <u>The Failure to Enforce the Tariff Caused Harm to the Market Monitor.</u>**

Section IV.G of the Attachment M to the Tariff exists to protect the Market Monitor from exclusion from PJM stakeholder meetings, including meetings of the Liaison Committee. The Market Monitor sought to enforce Section IV.G of the Attachment M to the Tariff by filing a complaint under Section 206 of the Federal Power Act. When FERC denied the Complaint, it failed to enforce Section IV.G of Attachment M to the Tariff and caused harm to the Market Monitor as a result of the Market Monitor's continued exclusion from Liaison Committee meetings. The continued harm is directly traceable to the March 1st Order and the Rehearing Order. In the Addendum, in the Declaration of Dr. Joseph E. Bowring, the Market Monitor provides details about how the Market Monitor was and is harmed.

**C. <u>The Harm Is Redressable.</u>**

The Market Monitor seeks enforcement of Section IV.G of Attachment M to the Tariff. Such enforcement will prevent injury to the Market Monitor by affirming its right to attend future meetings of the Liaison Committee. Further,

participants should be directed to make meeting minutes and presentations available to the Market Monitor and should be permitted to discuss with the Market Monitor the content of discussions that occurred during those meetings of the Liaison Committee from which the Market Monitor was unlawfully excluded. Harm resulting from the violation of Section IV.G of Attachment M to the Tariff is clearly redressable by enforcing the Tariff regulation.

## **ARGUMENT**

## II. THE PETITION SHOULD BE GRANTED IN ORDER TO ENFORCE THE TARIFF REGULATIONS THAT PROTECT THE MARKET MONITOR FROM EXCLUSION FROM STAKEHOLDER COMMITTEE MEETINGS.

### A. **Relief Should Be Granted Based on the Plain Language of the Tariff.**

In the Complaint, the Market Monitor requested that the Commission rely on the plain language of Section IV.G of Attachment M to the Tariff to protect its ability to participate in Liaison Committee meetings:

> The Market Monitoring Unit may, as it deems appropriate or necessary to perform its functions under this Plan, participate (consistent with the rules applicable to all PJM stakeholders) in stakeholder working groups, committees or other PJM stakeholder processes.

The purpose of the phrase "or other PJM stakeholder processes" in Section IV.G of Attachment M to the Tariff is to avoid a narrow interpretation of stakeholder working groups and stakeholder committees. It is a blanket

authorization for the Market Monitoring Unit to participate in all PJM stakeholder processes.[37] Nothing limits the language to committees or stakeholder processes that directly involve making decisions.

In the March 1st Order, and in the Rehearing Order, the Commission denied the Complaint. The March 1st Order explained the decision in three sentences (P 85):

> The Commission has previously explained that '[t]he stakeholder process is used to identify, review, and make decisions regarding proposed revisions to PJM's governing documents, processes, market and reliability design and operations.'[footnote omitted] Moreover, the Commission has consistently discussed stakeholder processes as elements of a decision making process.[footnote omitted] The Liaison Committee is not, on its face, an element of the decision making process regarding proposed revisions to tariff provisions, governing documents, processes, or market design and operations.[footnote omitted]

The reference is to "identify, review and make decisions" and not solely to "make decisions." The Commission has not found that every element of the stakeholder process must make decisions. Most stakeholder processes do not make

---

[37]   There is no ambiguity in the language, but even if there were, "[t]ariff provisions are to be construed strictly against" the drafter, in this case, PJM. *United States v. Interstate Com. Comm'n*, 198 F.2d at 966 (citations omitted).

decisions authorizing rule changes. Many stakeholder processes do not even make recommendations on rule changes.

The Liaison Committee is clearly an element of the broader PJM stakeholder process that includes the identification of issues and the review of issues. There is no question that the Liaison Committee identifies issues and reviews issues. As Commissioner Christie stated (Dissent at P 10): "I think we can all agree that a process is [a] series of actions leading to an end result." There is no basis for the Commission's conclusion that the Liaison Committee is not included in "other PJM processes." There is also no question that the Liaison Committee is designed to influence decision making by the Board.[38] The Board is able to make decisions on proposed market design changes by completely bypassing all stakeholder processes.[39]

PJM provides a definition of and goals for the stakeholder process in Manual 34 (PJM Stakeholder Process) that is consistent with the Complaint:

---

[38]    PJM explained to the Board in its comments on the notice of proposed rulemaking that lead to Order No. 719, a rule intended to reform PJM and other organized wholesale electric markets: "The Liaison Committee structure was an attempt by the Members to respect the Board's independence in decision-making while ensuring *accountability* and clear communication" [emphasis added]. *See Comments of PJM Interconnection, L.L.C.*, Docket No. RM07-19-000 (April 21, 2008).

[39]    Operating Agreement §§ 7.7, 10.4 (Included in Addendum).

The stakeholder process is the method used by the Members, PJM and other stakeholders to carry out the responsibilities and powers of the Members Committee. This process also recognizes the responsibilities and powers of the Board of Managers, the Office of the Interconnection, the Independent Market Monitor and certain other stakeholders as discussed herein.

The goal of the stakeholder process is to efficiently, effectively and fairly identify, review and make decisions regarding proposed revisions to PJM's governing documents, processes, market and reliability design and operations. The tools provided herein assist in that process by promoting a greater understanding of issues, collaborative problem solving and consensus building. Ideally, all stakeholders will participate in the process beginning at the lowest level stakeholder group. In doing so, the most comprehensive solutions will be generated, and the inefficiency of re-reviewing material or failed proposals at higher level Stakeholder Groups will be avoided.[40]

Manual 34 clearly states that the stakeholder process includes: the identification of issues; the review of issues; and the understanding of issues. Manual 34 recognizes the importance of participation in lower level stakeholder groups, even though these groups do not make decisions, or, in many cases, on many matters, even recommend decisions. Manual 34 defines the stakeholder process as a holistic process, not limited to the role of any individual committee. The manual emphasizes (*id*.): "This process also recognizes the responsibilities and

---

[40]    *See* PJM Manual 34 (PJM Stakeholder Process), Rev. 19 (November 15, 2023) at 19 (PJM Manual 34 is included in the Addendum).

powers of the Board of Managers [and] the Independent Market Monitor." By

recognizing that stakeholder processes include the Market Monitor's

responsibilities, Manual 34 acknowledge that important of the Market Monitor's

participation in the stakeholder processes to its mission.

Commissioner Christie explains (*id.*):

> [T]he idea that the Liaison Committee does not identify or
> review any issues related to, *inter alia*, the PJM tariff or
> markets seems non-sensical to say the least and would
> undoubtedly be a surprise to those members of the Liaison
> Committee who undoubtedly believe that they are
> addressing and identifying issues of consequence to the
> PJM tariff and markets to the PJM Board.

Section IV.G of Attachment M to the Tariff protects the ability of the

Market Monitor to determine the committees or other stakeholder processes in

which it participates. Section IV.G of Attachment M to the Tariff explicitly assigns

to the Market Monitor the ability to determine the stakeholder processes where its

attendance is "appropriate or necessary." Nothing in the March 1st Order provides a

reasonable basis for rejecting the Market Monitor's decision to attend a specific

stakeholder process.

The balance of the March 1st Order on the Market Monitor's Complaint

raises questions about the reasons for the Market Monitor's decision to attend the

Liaison Committee and does not address the Market Monitor's ability to attend.

- 24 -

While the Market Monitor does not agree with the assertions in the March 1st Order, the assertions are not relevant.

### B. Enforcement of the Tariff Takes Precedence Over Statements in the Liaison Committee Charter.

Prior to 2018, the Market Monitor attended Liaison Committee meetings. Then, under the guise of enforcing the Liaison Committee charter, on September 27, 2018, the Members Committee voted to exclude the Market Monitor from future Liaison Committee meetings. Neither the Members Committee nor PJM has the authority to enforce a committee charter in violation of the Tariff.[41]

### CONCLUSION

The Market Monitor should be permitted to participate in meetings of the Liaison Committee. It is inconsistent with the independence of PJM, the independence of the PJM Board and the independence of the Market Monitor to exclude the Market Monitor from any stakeholder process. The March 1st Order should be set aside and the FERC should be directed to enforce Section IV.G of Attachment M to the Tariff.

---

[41] *See AT&T v. Central Office Tel., Inc.*, 524 U.S. 214, 227 (1998) (The rights as defined by the tariff cannot be varied or enlarged by either contract or tort...").

- 25 -

Respectfully submitted,

/s/ Jeffrey W. Mayes
Jeffrey W. Mayes
General Counsel
Monitoring Analytics, LLC
2621 Van Buren Avenue, Suite 160
Eagleville, Pennsylvania 19403
(610) 271-8053
*jeffrey.mayes@monitoringanalytics.com*

*Counsel for the Independent Market
Monitor for PJM*

April 25, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rules 32(a)(7)(B) and 32(g)(1) of the Federal Rules of Appellate Procedure, the undersigned certifies that the foregoing brief complies with the applicable type-volume limitations. The brief was prepared using a proportionally spaced type (Times New Roman, 14 point) and contains 5,118 words, not including the cover page, corporate disclosure statement, tables of contents and authorities, the glossary, the certificates of counsel, the signature block, and proof of service. This certificate was prepared in reliance on the word-count function of the word processing system (Microsoft Word 2016) used to prepare the brief.

Respectfully submitted,

<u>/s/ Jeffrey W. Mayes</u>
Jeffrey W. Mayes

April 25, 2025

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of April 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system and unregistered participants will be served via U.S. Mail.

Respectfully submitted,

/s/ Jeffrey W. Mayes
Jeffrey W. Mayes

April 25, 2025